Andrew T. Solomon (AS 9200)
Gretchen S. Silver (GS 1534)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x
                                                                      :
PROFESSIONAL OFFSHORE                                                 :
OPPORTUNITY FUND, LTD., a company              :  08-CIV-5643 (SAS)
registered under the laws of the British Virgin
Islands,                                                              :

                          Plaintiff,          :    **DECLARATION OF
                                                   GRETCHEN S. SILVER
                                              :    IN SUPPORT OF
       -against-                              :    <u>MOTION FOR DEFAULT</u>**

AMEREX GROUP, INC., a Delaware                :
corporation,
                                                   ECF CASE
                          Defendant.          :

                                              :

--------------------------------------------------------------------- x


GRETCHEN S. SILVER, pursuant to 28 U.S.C. § 1746, declares as follows:

       1.      I am an attorney admitted to practice before this Court and an associate with the

law firm Sullivan & Worcester LLP, counsel to plaintiff Professional Offshore Opportunity

Fund, Ltd. ("PROOF") in this action.  I submit this declaration in support of plaintiff's motion

for entry of default judgment against defendant Amerex Group, Inc. ("Amerex") in this action.  I

base this declaration upon personal knowledge and files maintained by Sullivan & Worcester

LLP in this action.

2.    On June 23, 2008, PROOF filed a Summons and Complaint in this action, a true and correct copy of which I attach as Exhibit 1.

3.    This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between a citizen of a State (Amerex is a Delaware corporation with its principal place of business in Oklahoma) and a citizen of a foreign state (PROOF is a British Virgin Islands Company with its principal place of business in the British Virgin Islands).

4.    This Court has personal jurisdiction over Amerex under the terms of the Promissory Note, pursuant to which the parties irrevocably consented to submit to the jurisdiction of New York and, specifically, the jurisdiction and venue of the United States District Court for the Southern District of New York.  *See* §4.8 of the Promissory Note (the "Note"), a true and correct copy of which is attached to the Complaint as Exhibit A.

5.    I attach a true and correct copy of the side letter agreement (the "Letter Agreement") as Exhibit 2.

6.    On June 24, 2008, PROOF effected proper service on Amerex, which, pursuant to §§ 4.2 and 4.8 of the Note, agreed to service of summons by FedEx and facsimile.

7.    On June 27, 2008, PROOF filed the affidavit of service, a true and correct copy of which I attach as Exhibit 3.

8.    More than 20 days have elapsed since Amerex was served with the Summons and Complaint.  To date, Amerex has failed to answer or otherwise appear in the action.

9. On July 22, 2008, on PROOF's request, the Clerk of the Court issued the Clerk's Certificate certifying Amerex's default. I attach the original Clerk's Certificate as Exhibit 4.

10. The damages that PROOF is entitled to receive are:

- Principal amount due under the Note: $750,000 (Complaint ¶ 7);

- Capital Utilization Fees due under the Note: $75,000 (Complaint ¶ 17);

- Post-default interest on the Principal and Capital Utilization Fees at the rate of 18% per annum (Complaint ¶ 8) from April 30, 2008: $406.85 per day until the date of judgment, or $34,582.19 as of July 24, 2008;

- Amount due defendant's share repurchase obligation: $700,000 (Complaint ¶ 9);

- Interest on the amount owed for the repurchase of the shares at the default rate of 2% per month (Complaint ¶ 10) from June 20, 2008 to the date of judgment: $460.27 per day until the date of judgment, or $15,649.32 as of July 24, 2008;

- Attorneys' fees and costs of this lawsuit and collection: $2,000.

11. I attach a schedule showing the calculation of interest and damages as Exhibit 5.

12. To date, Amerex has not paid PROOF any amount of the damages sought in this action (Complaint ¶¶ 16 and 21).

13. Defendant Amerex Group, Inc. is a corporation and, therefore, is not in military service and is not an infant or incompetent.

14. Therefore, I respectfully request an order directing the clerk to enter a default judgment against Defendant Amerex Group, Inc. in this action. I attach a proposed default judgment as Exhibit 6.

15.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York, this 24th day of July, 2008.


/s/_____
Gretchen S. Silver (GS 1534)

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

PROFESSIONAL OFFSHORE OPPORTUNITY
FUND, LTD.

V.

AMEREX GROUP, INC.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

# 08 CV 5643

## JUDGE SCHEINDLIN

TO: (Name and address of Defendant)

Amarex Group, Inc.
1105 N. Peoria Avenue
Tulsa, Oklahoma  74106

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Sullivan & Worcester LLP
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000
Attn:  Andrew T. Solomon

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_Marcos Quintero_

(By) DEPUTY CLERK

DATE     JUN 2 3 2008

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                    Date                        *Signature of Server*


                                        _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Andrew T. Solomon (AS 9200)
Gretchen S. Silver (GS 1534)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
PROFESSIONAL OFFSHORE                                          :
OPPORTUNITY FUND, LTD., a company                             :
registered under the laws of the British Virgin                :
Islands,                                                       :
                                                               :
                              Plaintiff,                        :
                                                               :
         -against-                                             :
                                                               :
AMEREX GROUP, INC., a Delaware                                :
corporation,                                                   :
                                                               :
                              Defendant.                        :
                                                               :
-------------------------------------------------------------- x



JUDGE SCHEINDLIN

08 CV 5643

**COMPLAINT**

    Plaintiff Professional Offshore Opportunities Fund, Ltd. ("PROOF"), through its

attorneys Sullivan & Worcester LLP, for its Complaint says:

## PARTIES

    1.  This is an action to enforce a defaulted promissory note in the principal amount of

$750,000 and a letter agreement pursuant to which the defendant agreed to repurchase 500,000

shares of common stock held by plaintiff for $700,000.

    2.  PROOF is a foreign company organized under the British Virgin Islands Companies

Act, 2004, with its principal place of business in the British Virgin Islands.  PROOF is an

offshore investment fund.

{N0118980; 1}

3.  On information and belief, defendant Amerex Group, Inc. ("Amerex") is a Delaware corporation with its principal place of business located at 1105 N. Peoria Avenue, Tulsa, Oklahoma 74106.  On information and belief, Amerex, through its subsidiaries, provides industrial and hazardous waste management services, as well as environmental remediation and abatement services.

## JURISDICTION AND VENUE

4.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. §1332(a)(2), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

5.  This Court has personal jurisdiction over the defendant under the terms of the agreements at issue, pursuant to which the parties irrevocably consented to submit to the jurisdiction of New York and, specifically, the jurisdiction and venue of the United States District Court for the Southern District of New York.

6.  Venue is proper pursuant to 28 U.S.C. §1391(a)(2) and (a)(3).  A substantial part of the events took place in this district, and defendant is deemed to reside in this district by being subject to personal jurisdiction here, 28 U.S.C. §1391(c).

## FACTS COMMON TO ALL COUNTS

7.  Amerex issued a Secured Promissory Note to PROOF (the "Note," Exhibit A), dated August 14, 2007, in the principal amount of $750,000.

8.  The material terms of the Note, which are governed by New York law, are summarized as follows:

    a.  *Monthly payments*: on September 14, 2007 and on the 10th of each month thereafter, Amerex promised to pay PROOF the sum of $150,000 plus a 10%

capital utilization fee on such amount, making the total monthly payment $165,000. PROOF provided an amortization schedule to Amerex's representatives showing these scheduled payments, a copy of which is attached as Exhibit B.

   b.  *Stock in lieu of payment*: in lieu of the monthly payment, Amerex could provide to PROOF unrestricted free trading shares equal to the monthly payment amount but valued based on a 30% discount to the market.

   c.  *Default interest and attorney's fees*:  In the event of a default, Amerex agreed to pay PROOF default interest in the amount of 18 percent per annum on any amount due under the Note. Amerex also agreed to reimburse PROOF for any costs and expenses, including counsel fees, in connection with enforcement of the Note and any collection costs on any judgment.

9.  In connection with the Note, Amerex and PROOF also entered into a side letter agreement (the "Letter Agreement").  Under the Letter Agreement, and as additional consideration for PROOF's loan, Amerex issued 500,000 shares of common stock to PROOF (the "Shares").  At the time of issuance, the shares were not registered and could not be freely traded.  Amerex agreed that, on any material breach of the Note, Amerex would repurchase the shares from PROOF for $700,000.

10. Under the Letter Agreement, Amerex further agreed to pay interest at a rate of two percent per month in the event that it fails to fulfill its repurchase obligations.

## COUNT 1
## BREACH OF THE NOTE

11. Plaintiff incorporates by reference the allegations in paragraphs 1 to 10.

12. In violation of its contractual obligations, Amerex failed to pay the first scheduled payment under the Note when due.

13. On September 25, 2007, PROOF sent to Amerex a notice of default. A copy of the Notice is attached hereto as Exhibit C.

14. On September 28, 2007, PROOF entered into a one-month forbearance agreement with Amerex. Pursuant to that agreement, Amerex acknowledged its default, but PROOF agreed, without waiving the default, to extend Borrower's deadline to make the first payment until October 10, 2007, with each scheduled payment thereafter extended by one month. Thereafter, Amerex and PROOF agreed to extend the forbearance period by additional one-month periods, provided that Amerex pay to PROOF the sum of $20,000 for each such month.

15. On April 10, 2008, Amerex failed to extend the forbearance and failed to make the payment due. PROOF nevertheless agreed to permit Amerex to make the April 10 payment on or before April 30. Amerex, however, failed to make the payment due as of that extended date or thereafter. Amerex's failure to make the payments due under the Note constitutes an event of default under the Note.

16. Following Amerex's April 30 default, PROOF made numerous demands for payment on Amerex, by email and verbally, but Amerex has refused to pay the amounts due.

17. As a result of Amerex's default, PROOF has been damaged in the amount of $750,000 for unpaid principal, $75,000 for unpaid capital utilization fees, plus default interest.

**COUNT II**
**BREACH OF THE LETTER AGREEMENT**

18. Plaintiff incorporates by reference the allegations in paragraphs 1 to 17.

19. Amerex's default under the Note also triggers PROOF's rights under the Letter Agreement.

20. Under the Letter Agreement, as a result of Amerex's default under the Note (and for the additional reason that the Shares remain unregistered and restricted), Amerex is required to repurchase the Shares for $700,000.

21. Amerex has refused to fulfill its repurchase obligation under the Letter Agreement.

22. As a result of Amerex's breach of the Letter Agreement, PROOF has been damaged in the amount of $700,000 plus monthly interest at the rate of two percent per month.

WHEREFORE Plaintiff demands judgment against Defendant as follows:

a. On Count I, $750,000 for the principal due under the Note, $75,000 for the capital utilization fees due under the Note, plus interest at the rate of 18 percent per annum from April 30, 2008 to the date of judgment;

b. On Count II, for damages and/or specific performance arising out of defendant's failure to repurchase the Shares under the Letter Agreement for $700,000 and for damages in the form of interest on $700,000 at the default rate of two percent per month from June 20, 2008 to the date of judgment; and

c. on all Counts, attorneys' fee and costs of this lawsuit and collection, taxable costs and disbursements, and such other and further relief as the Court deems just and necessary.

Dated: New York, New York
June 20, 2008

SULLIVAN & WORCESTER LLP

By: _____
Andrew T. Solomon (AS 9200)
Gretchen S. Silver (GS 1534)
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff Professional Offshore Opportunities Fund, Ltd.*

To:    Amerex Group, Inc.
       1105 N. Peoria Avenue
       Tulsa, Oklahoma 74106
       Attn: Nicholas Malino

{N0118980; 1}                                        5

EXHIBIT A

<u>**EXECUTION COPY**</u>

<u>**SECURED PROMISSORY NOTE**</u>

**$750,000**                                                        August 14, 2007

     **FOR VALUE RECEIVED**, the undersigned, **AMEREX GROUP, INC.**, a Delaware corporation (the "Borrower"), does hereby promise to pay to the order of **PROFESSIONAL OFFSHORE OPPORTUNITY FUND, LTD.** ("Holder"), or its assigns, at 1400 Old Country Road, Suite 206, Westbury, New York 11590, the aggregate principal sum of Seven Hundred Fifty Thousand Dollars ($750,000) on February 10, 2008 (the "Maturity Date"). The Borrower acknowledges that upon funding the Lender shall deduct from the proceeds of this Note prepaid interest in the amount of $90,000 and legal fees and expenses incurred by the Lender in an amount not to exceed $25,000.

**ARTICLE I**
**TERMS OF PAYMENT**

    1.1    <u>Payments and Prepayments</u>

    1.    Commencing on September 14, 2007 and continuing on the 10thday of each month thereafter (the "Monthly Payment Date") until this Note is paid in full, the Borrower shall pay to the Holder one hundred and fifty thousand dollars ($150,000) plus a utilization fee of ten percent (10%) on the amount so paid (the "Monthly Payment"). In lieu of the Monthly Payment, the Borrower may on each Monthly Payment Date issue to the Holder that number of unrestricted, free trading shares of the Borrower's common stock, par value $.001, having a value equal to the Monthly Payment based on a per share price equal to a 30% discount to the average closing bid price for the five (5) trading days preceding the Monthly Payment Date.

    2.    The Borrower may in its discretion without restriction prepay this Note at any time in whole or in part, together with the utilization fee applicable thereto.

    3.    The Borrower further agrees that, if any payment made by the Borrower or any other person is applied to this Note and is at any time annulled, set aside, rescinded, invalidated, declared to be fraudulent or preferential or otherwise required to be refunded or repaid, or the proceeds of any property hereafter pledged as security for this Note is required to be returned by Holder to the Borrower, its estate, trustee, receiver or any other party, including, without limitation, under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or repayment, the Borrower's liability hereunder (and any lien, security interest or other collateral securing such liability) shall be and remain in full force and effect, as fully as if such payment had never been made, or, if prior thereto any such lien, security interest or other collateral hereunder securing the Borrower's liability hereunder shall have been released or terminated by virtue of such cancellation or surrender, this Note (and such lien, security interest or other collateral) shall be reinstated in full force and effect, and such prior cancellation or surrender shall not diminish, release, discharge, impair or otherwise affect the obligations of the Borrower in respect to the amount of such payment (or any lien, security interest or other collateral securing such obligation).

1.2    Payment and Computations

All computations of interest shall be made by Holder on the basis of a year of 360 days for the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest is payable. Whenever any payment to be made hereunder shall be stated to be due on a day which is not a business day, such payment shall be made on the next succeeding day and such extension of time shall in such case be included in the computation of payment of interest.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES; COVENANTS

2.1    Representations and Warranties. The Borrower represents and warrants as follows: (i) the Borrower is a corporation duly organized, validly existing and in good standing under the laws of the State of Oklahoma; (ii) the execution, delivery and performance by the Borrower of this Note are within the Borrower's powers, have been duly authorized by all necessary action, and do not contravene (A) the Borrower's certificate of incorporation or bylaws or (B) (x) any law or (y) any agreement or document binding on or affecting the Borrower, (iii) to the extent required, the Borrower has received authorization or approval, and has provided notice to or filed with, any governmental authority, regulatory body or third person for the due execution, delivery and performance by the Borrower of this Note; (iv) this Note constitutes the legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms except as enforcement hereof may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights generally and subject to the applicability of general principles of equity; (v) the Borrower has all requisite power and authority to own and operate its property and assets and to conduct its business as now conducted and proposed to be conducted and to consummate the transactions contemplated hereby; (vi) the Borrower is duly qualified to conduct its business and is in good standing in each jurisdiction in which the character of the properties owned or leased by it, or in which the transaction of its business makes such qualification necessary; (vi) except as disclosed in the Borrower's SEC filings, there is no pending or, to the Borrower 's knowledge, threatened action or proceeding affecting the Borrower before any governmental agency or arbitrator which challenges or relates to this Note or which may otherwise have a material adverse effect on the Borrower; (viii) the Borrower is not in violation or default of any provision of (A) its certificate of formation or operating agreement, each as currently in effect, or (B) any instrument, judgment, order, writ, decree or contract, statute, rule or regulation to which the Borrower is subject, and (ix) this Note is validly issued, free of any taxes, liens, and encumbrances related to the issuance hereof and is not subject to preemptive right or other similar right of members of the Borrower.

2.2    Covenants. So long as any principal or interest is due hereunder and shall remain unpaid, the Borrower will, unless the Holder shall otherwise consent in writing:

(a)    Maintain and preserve its existence, rights and privileges;

(b)    Not distribute, directly or indirectly, by way of dividend, loan or otherwise, any amounts to its stockholders;

(c)     Not incur any Indebtedness, other than Indebtedness incurred in the ordinary course of business or outstanding on the date hereof, unless such Indebtedness is subordinated to the prior payment in full of this Note on terms reasonably satisfactory to the Holder;

(d)     Not (i) directly or indirectly sell, lease or otherwise dispose of (A) any of its property or assets other than in its ordinary course of business or (B) substantially all of its properties and assets, in the aggregate, to any person(s), whether in one transaction or in a series of transactions over any period of time, (ii) merge into or with or consolidate with any other person or (iii) adopt any plan or arrangement for the dissolution or liquidation of the Borrower;

(e)     Give written notice to Holder upon the occurrence of an Event of Default (as defined below) or any event but for the giving of notice or lapse of time, or both, would constitute an Event of Default within five (5) days of such event;

(f)     Not use the proceeds from the issuance of this Note in any way for any purpose that entails a violation of, or is inconsistent with, Regulation U of the Board of Governors of the Federal Reserve System of the United States of America;

(g)     Comply in all material respects with all applicable laws (whether federal, state or local and whether statutory, administrative or judicial or other) and with every applicable lawful governmental order (whether administrative or judicial).

(h)     Not redeem or repurchase any of its capital stock or other equity interests;

(i)     Not (i) make any advance or loan to any person, firm or corporation, except for reasonable travel or business expenses advanced to the Company's employees or independent contractors in the ordinary course of business, or (ii) acquire all or substantially all of the assets of another entity;

(j)     Not prepay any Indebtedness, except for trade payables incurred in the ordinary course of the Borrower's business; or

(k)     The Company shall not intentionally take any action which would impair the rights and privileges of this Note set forth herein or the rights and privileges of the Holder of this Note.

## ARTICLE III
## EVENTS OF DEFAULT

3.1     <u>Events of Default</u>.  If any of the following events ("Events of Default") shall occur and be continuing:

(a)     The Borrower shall fail to pay any principal of, or interest on, this Note within two (2) days after such payment is due; or

(b)     Any representation or warranty made by the Borrower or any other person or entity under this Note or under any Pledge Agreement executed and delivered simultaneously herewith (collectively referred to herein with the Note as the "Loan Documents"), shall prove to have been incorrect in any material respect when made; or

(c)    The Borrower or any other person or entity shall fail to perform or observe any other term, covenant or agreement contained in any Loan Document on its part to be performed or observed after the expiration of all applicable grace and notice periods, or there is any other breach of any Loan Document; or

(d)    The Borrower shall generally not pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the Borrower or any of its subsidiaries seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property and such proceeding is not dismissed within 90 days after commencement; or the Borrower shall take any corporate action to authorize any of the actions set forth above in this subsection (d); or

(e)    Any judgment or order for the payment of money in excess of $,25,000 shall be rendered against the Borrower and there shall be any period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(f)    The Borrower shall fail to pay any Indebtedness in excess of $50,000 (other than Indebtedness evidenced by this Note) when due (after any applicable grace period) or any such Indebtedness shall be declared due and payable or required to be prepaid, prior to the stated maturity thereof;

then, and in any such event, Holder may, by notice to the Borrower, declare this Note, all interest thereon and all other amounts payable under this Note to be forthwith due and payable, whereupon this Note, all such interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower and the Holder shall have the right to exercise all rights under applicable law and hereunder; provided that upon the occurrence and continuation of an Event of Default pursuant to clause (d) above all amounts due hereunder shall automatically be due and payable without notice to the Company and the Holder shall have the right to exercise any and all remedies under applicable laws.

## ARTICLE IV
## MISCELLANEOUS

4.1    Amendments, Etc.  No amendment or waiver of any provision of this Note, nor consent to any departure by the Borrower herefrom, shall in any event be effective unless the same shall be in writing and signed by Holder and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

4.2    Notice, Etc.  Any notice required by the provisions of this Note will be in writing and will be deemed effectively given: (a) upon personal delivery to the party to be notified; (b) when sent by confirmed telex or facsimile if sent during normal business hours of the recipient; if not, then on the

next business day; (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt, and delivered as follows:

If to the Borrower:

Amerex Group, Inc.
1105 N. Peoria Avenue
Tulsa, Oklahoma 74106
Attention: Nicholas Malino
Facsimile Numbers: 918-599-0786

If to Holder:

Professional Offshore Opportunity Fund, Ltd.
1400 Old Country Road
Suite 206
Westbury, New York 11590
Attention: Howard Berger
Facsimile Number: (516) 228-8270

or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties.

4.3    No Waiver; Remedies. No failure on the part of Holder to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or future exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

4.4    Accounting Terms. All accounting terms not specifically defined herein shall be construed in accordance with generally accepted accounting principles consistently applied, except as otherwise stated herein.

4.5    Cost and Expenses. The Borrower agrees to pay on demand all losses, costs and expenses, if any (including reasonable counsel fees and expenses), in connection with the preparation and negotiation of and the enforcement of this Note, including post-judgment collection, and any other instruments and documents delivered in connection therewith.

4.6    Default Interest. In the Event of Default, Borrower shall pay Lender interest on any amount due under this Note, from the date of the Event of Default, at the rate of eighteen percent per annum (18%) or the highest rate permitted by law, whichever is lower, until paid in full.

4.7    Binding Effect; Governing Law. This Note shall be binding upon and inure to the benefit of the Borrower and Holder and their respective successors and assigns; provided that the Borrower may not assign this Note, in whole or in part, by operation of law or otherwise, without the prior written consent of the Holder. Holder may assign or otherwise participate out all or part of, or any interest in, its rights and benefits hereunder and to the extent of such assignment or participation

such assignee shall have the same rights and benefits against the Borrower as it would have had if it were the Holder.  This Note, and any claims arising out of relating to this Note, whether in contract or tort, statutory or common law, shall be governed exclusively by, and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws.  No other state's law shall apply to any claim relating to or arising from this Note or any transaction relating to this Note.

    4.8    Jurisdiction.

THE BORROWER CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT UNDER, ARISING OUT OF OR IN ANY MANNER RELATING TO THIS NOTE, OR ANY OTHER INSTRUMENT OR DOCUMENT EXECUTED AND DELIVERED IN CONNECTION HEREWITH SHALL BE BROUGHT EXCLUSIVELY IN ANY COURT OF THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, IN EACH CASE, IN THE COUNTY OF NEW YORK. THE BORROWER, BY THE EXECUTION AND DELIVERY OF THIS NOTE, EXPRESSLY AND IRREVOCABLY CONSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDINGS.  THE BORROWER AGREES THAT PERSONAL JURISDICTION OVER IT MAY BE OBTAINED BY THE DELIVERY OF A SUMMONS (POSTAGE PREPAID) IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4.2 OF THIS NOTE.  ASSUMING DELIVERY OF THE SUMMONS IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4.2 OF THIS NOTE, THE BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES ANY ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OF FORUM NON CONVENIENS OR ANY SIMILAR BASIS.

    4.9    Waiver of Presentment.  The Borrower waives presentment, notice of dishonor, notice of protest, presentment  and demand in connection with the delivery, acceptance, performance or default of this Note.

    4.10    Security.  This Note is secured by and is entitled to the benefits of the Pledge Agreement.

    4.11    No Violation of Usury.  This confirms that the Borrower and, by its acceptance of this Note, Holder intend to contract in strict compliance with applicable usury laws from time to time in effect.  Accordingly, the Borrower and Holder stipulate and agree that none of the terms and provisions contained herein shall ever be construed to create a contract to pay, for the use or forbearance of money, interest in excess of the maximum amount of interest permitted to be charged by applicable law from time to time in effect.  Any sums collected by Holder and determined to be interest in excess of that which is permitted under applicable law shall be applied to and deemed to be principal owing by the Borrower.

### ARTICLE V
### INDEMNIFICATION

The Borrower hereby agrees to indemnify and hold harmless the Holder and its respective affiliates, directors, officers, partners, employees and other agents and representatives from and against any and all liabilities, judgments, claims, settlements, losses, damages, reasonable fees (including attorneys', accountants' and other experts' fees and disbursements), liens, taxes, penalties, obligations

and expenses incurred or suffered by any such person or entity arising from, by reason of or in connection with any misrepresentation or breach of any representation, warranty or covenant of the Borrower contained in this Note or other documents delivered by the Borrower pursuant to or in connection with this Note or otherwise in connection with or as a result of or related to the execution, delivery or performance of this Note or the transactions contemplated hereby. The indemnification provisions of this ARTICLE V shall survive repayments in full of this Note.

## ARTICLE VI
## DEFINITIONS

As used herein, the following terms are defined as follows:

6.1    "Indebtedness" with respect to any person or entity shall mean all items (other than capital stock, capital surplus, retained earnings, obligations payable in capital stock of such person or entity and deferred credits) which in accordance with generally accepted accounting principals would be included in determining total liabilities as shown on the liability side of a balance sheet of such person as at the date of which Indebtedness is to be determined. The term "Indebtedness" shall also include, whether or not so reflected, (i) indebtedness, obligations and liabilities secured by any lien on property of such person whether or not the indebtedness secured thereby shall have been assumed by such person, and (ii) all guaranties of any of the above. Notwithstanding the foregoing, in determining the indebtedness of any person, there shall be included all indebtedness of such person deemed to be extinguished under generally accepted accounting principles but for which such person or entity remains legally liable.

6.2    "Pledge Agreement" means the certain Pledge Agreement dated August 10, 2007 by Ronald Brewer and Richard Coody in favor of Borrower.

6.3    "Solvent" shall mean, with respect to any person or entity on a particular date, that on such date (i) the fair value of the property of such person or entity is not less than the total amount of the liabilities of such person or entity, (ii) the present fair salable value of the assets of such person or entity is not less than the amount required to pay the probable liability on such person's existing debts as they become absolute and matured, (iii) such person or entity is able to realize upon its assets and pay its debts and other liabilities, (iv) such person or entity does not intend to, and does not believe that it will, incur debts or liabilities beyond such person or entity's ability to pay as such debts and liabilities mature and (v) such person or entity is not engaged in business or a transaction, and is not about to engage in a business or a transaction, for which such person's or entity's property would constitute unreasonably small capital.

IN WITNESS WHEREOF, the Borrower has caused this Note to be executed by its officer duly authorized, as of the date first above written.

AMEREX GROUP, INC.

By:_____

    Name:
    Title:

# EXHIBIT B

Amortization Schedule

Secured Promissory Note

| Lender | Professional Offshore Opportunities Fund | | | | |
|---|---|---|---|---|---|
| Borrower | Amerex Group, Inc. | | | | |
| Principal | $ | 750,000.00 | | | |
| Prepaid Interest | $ | 90,000.00 | | | |

| | Beginning Balance | Payments | Ending Balance | utilization fee | total payments |
|---|---|---|---|---|---|
| 8/10/2007 | $ 750,000.00 | $ | $ 750,000.00 | | |
| 9/10/2007 | $ 750,000.00 | $ 150,000.00 | $ 600,000.00 | $ 15,000.00 | $ 165,000.00 |
| 10/10/2007 | $ 600,000.00 | $ 150,000.00 | $ 450,000.00 | $ 15,000.00 | $ 165,000.00 |
| 11/10/2007 | $ 450,000.00 | $ 150,000.00 | $ 300,000.00 | $ 15,000.00 | $ 165,000.00 |
| 12/10/2007 | $ 300,000.00 | $ 150,000.00 | $ 150,000.00 | $ 15,000.00 | $ 165,000.00 |
| 1/10/2008 | $ 150,000.00 | $ 150,000.00 | $ - | $ 15,000.00 | $ 165,000.00 |
| Totals | | $ 750,000.00 | | $ 75,000.00 | $ 825,000.00 |

EXHIBIT C

PROFESSIONAL OFFSHORE OPPORTUNITY FUND, LTD
1400 OLD COUNTRY ROAD, STE 206
WESTBURY, NY 11590

Via Facsimile (918) 599-0786

September 25, 2007

Amerex Group Inc.
1105 N. Peoria Ave.
Tulsa, OK  74106
Attention: Nicholas Malino

Dear Sirs:

Pursuant to a certain Secured Promissory Note in the principal amount of $750,000 USD
dated August 10, 2007 this shall serve as notice that Amerex Group Inc. (the "Borrower")
is in default for its failure to make the principal and utilization payment of $165,000 due
on September 10, 2007.

In addition to all other remedies at our disposal we have chosen to foreclosure on the
collateral pledged to secure such note at this time.  In addition, we are instructing the
broker of record where certain of the collateral shares were deposited to immediately
forward the same to the transfer agent for transfer to us.

Sincerely yours,

Professional Offshore Opportunity Fund, LTD

By:    _____
        Howard Berger- Manager



AMEREX COMPANIES, INC.

August 15, 2007

Professional Offshore Opportunity Fund, Ltd.
1400 Old Country Road
Suite 206
Westbury, New York 11590

Gentlemen:

Simultaneously with the execution and delivery of this letter (this "Agreement"), the undersigned, Amerex Group, Inc., a Delaware corporation (the "Borrower"), is executing and delivering to Professional Offshore Opportunity Fund, Ltd. (the "Lender") that certain Secured Promissory Note dated the date hereof in the principal amount of $750,000 (the "Note") to evidence the loan (the "Loan") made by the Lender to the Borrower. The purpose of this Agreement is to reflect certain agreements regarding the 500,000 shares of common stock of the Borrower (the "Shares") being issued to the Lender by the Borrower simultaneously herewith as further consideration for, and as further inducement to the Lender to make, the Loan.

1.     Simultaneously with the execution and delivery of this Agreement, the Borrower is issuing the Shares to the Lender evidenced by duly issued stock certificates number 101580. All Shares delivered to the Lender shall be duly authorized, fully paid and nonassessable, free and clear of any liens and in proper certificated form in the name of Professional Offshore Opportunity Fund, Ltd., and shall be issued in compliance with all applicable federal and state securities laws.

2.     In the event that upon the earlier of (i) the Maturity Date or (ii) the date on which the Borrower prepays all amounts owing under the Note, the Shares are not unrestricted and free trading, then the Borrower shall, promptly upon the demand of the Lender, repurchase the Shares for the amount set forth below:

| Date of Payment of Note | Share Repurchase Amount |
|---|---|
| On or before September 14, 2007 | $200,000 |
| On September 15, 2007 but before October 14, 2007 | $300,000 |
| On October 15, 2007 but before November 14, 2007 | $400,000 |

{N0092913; 4}

Professional Offshore Opportunity Fund, Ltd.
August 14, 2007
Page -2-

On November 15, 2007 but before
    December 14, 2007                          $500,000

On December 15, 2007 but before
    January 14, 2008                            $600,000

On or after January 15, 2008, or at any time
in the event of a material breach of the Note,      $700,000

In the event of a failure of the Borrower to repurchase the Shares and pay amounts owing hereunder, the amounts owing shall bear interest at a rate of two percent (2%) per month until paid.

    The Borrower hereby represents and warrants to the Lender the following:

    (a)    <u>Power</u>. The Borrower (i) is duly organized, validly existing and in good standing under the laws of Delaware and (ii) has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions described herein.

    (b)    <u>Authorization; Binding Effect</u>. The execution and delivery by the Borrower of this Agreement and the Note, the performance by the Borrower of its obligations under this Agreement and the Note and the consummation of the transactions described herein and therein by the Borrower have been duly authorized by all requisite action on the part of the Borrower. This Agreement and the Note are the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms, except that such enforcement (i) may be limited by bankruptcy, insolvency, moratorium or similar laws affecting creditors' rights generally and (ii) is subject to the availability of equitable remedies, as determined in the discretion of the court before which such a proceeding may be brought.

    (c)    <u>Contravention</u>. Neither the execution, delivery and performance of this Agreement or the Note by the Borrower nor the consummation of the transactions described herein or therein by the Borrower will (with or without notice or lapse of time or both) (i) violate or breach any statute, law, rule, regulation or order by which Borrower or any of its properties may be bound or affected; or (ii) breach or result in a default under any material contract or material agreement to which Borrower is a party or by which Borrower or any of its properties may be bound or affected.

    (d)    <u>Consents</u>. No approval, consent, authorization or order of, notice to or registration or filing with, or any other action by, any governmental authority or any other person is required in connection with (i) the due execution and delivery by Borrower of this Agreement and the Note and the performance of the Borrower's obligations hereunder and thereunder, and (ii) the consummation by the Borrower of the transactions described herein and therein.

    (e)    <u>Litigation</u>. There is no action, lawsuit, arbitration, claim or proceeding, pending, or to the knowledge of Borrower, threatened, against Borrower that involves any of the

Professional Offshore Opportunity Fund, Ltd.
August 14, 2007
Page -3-

transactions described in this Agreement or the Note or which could restrict the performance of any obligation hereunder or thereunder.

(f)    Capital Stock.  The authorized capital stock of Borrower and the number of issued shares of each class of capital stock after giving effect to the issuance of the Shares is set forth in Schedule 1.  The Shares represent fifteen percent (15%) of the Borrower's outstanding common stock on a fully diluted basis.  The Borrower has two subsidiaries.  Except as otherwise disclosed in the Borrower's SEC Filings, there are no options, warrants, subscriptions, conversion rights or securities exchange rights or other securities or other contractual rights outstanding which require, or give any person the right to require, the issuance, delivery or sale (including right of conversion or exchange) of any capital stock of the Borrower, whether or not such rights are presently exercisable.  There are no preemptive rights, rights of first refusal or other similar agreements obligating the Borrower to offer any of its capital stock to any person and none of the shares of capital stock of the Borrower was issued in violation of any such rights.  No holder of any securities of the Borrower (or securities issuable in exchange therefor) has the right to require any party to register such securities under the Securities Act of 1933, as amended (as defined), either on a "demand" or a "piggyback" basis.  All shares, options and warrants and other securities of the Borrower issued since its date of incorporation, including, without limitation, the Shares, were issued in compliance with the registration provisions of such Securities Act or pursuant to an exemption therefrom and all such shares are validly issued, fully paid and nonassesable.  The Borrower does not have outstanding bonds, debentures, notes or other obligations under the terms of which the holders of which have any rights to vote with the stockholders.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws rules.  THE BORROWER WAIVES ITS RIGHT TO CLAIM A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THIS AGREEMENT.

The Borrower acknowledges and agrees that its actual or threatened breach of this Agreement would result in irreparable damage to the Lender and that money damages would not provide an adequate remedy to the Lender.  Accordingly, the Borrower agrees that in the event of any such breach, the Lender shall have, in addition to any and all remedies of law, the right to have the provisions of this Agreement specifically enforced and to obtain injunctive and other equitable relief to enforce the provisions of this Agreement.

This Agreement may be amended or modified only by a written instrument signed by the Lender and the Borrower.  The Lender's failure at any time to require the performance of any provision of this Agreement shall in no manner affect the Lender's right at a later time to enforce the same provision.

The Borrower irrevocably (A) consents that any legal action or proceeding arising from or relating to this Agreement, whether in contract or tort, shall be commenced exclusively in the Supreme Court of the State of New York, County of New York, or the United States District Court for the Southern District of New York, (B) submits to the jurisdiction of any such Court in any such action or proceeding, (C) waives any claim or defense in any such action or proceeding based on any alleged lack of jurisdiction, improper venue or *forum non conveniens* and (D)

{N0092913; 4}

Professional Offshore Opportunity Fund, Ltd.
August 14, 2007
Page -4-

consents to service of process by mail at its address set forth below, or such other address as it shall provide to the Lender in writing. Service of process may be effected by notice sent by certified mail, return receipt requested, to the Borrower at its address set forth below.

This Agreement shall be binding upon the Borrower, and its legal representatives, successors and permitted assigns. In no event may the Borrower assign any rights or obligations under this Agreement without the Lender's prior written consent and any purported assignment without such consent shall be null and void.

Very truly yours,

AMEREX GROUP, INC.

By:_____
    Name: Nicholas J. Malino
    Title: CEO

Address: 1105 N. Peoria Avenue
         Tulsa, Oklahoma 74106

AGREED:

PROFESSIONAL OFFSHORE OPPORTUNITY
    FUND, LTD.

By:_____
    Name:
    Title:

{N0092913; 4}

SCHEDULE 1

<u>Capitalization</u>

18,773,596 basic and diluted

Andrew T. Solomon (AS 9200)
Gretchen S. Silver (GS 1534)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                             :

PROFESSIONAL OFFSHORE
OPPORTUNITY FUND, LTD., a company     :
registered under the laws of the British Virgin
Islands,                              Case No: 08 CV 5643 (SAS)

               Plaintiff,         :

    -against-             :   **AFFIDAVIT OF SERVICE**

AMEREX GROUP, INC., a Delaware
corporation,                    :

               Defendant.     :
------------------------------------------------------------ x

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )

    1. Richard J. Lombardo, being duly sworn, deposes and says: I am over eighteen years of age, I reside in Kings County, and I am not a party to this action.

    2. On June 24, 2008, I served in the above-captioned action true copies of the Summons and Complaint, the Civil Cover Sheet, plaintiff's Rule 7.1 Statement, the Individual Practices of Judge Shira A. Sheindlin and Judge Kevin Nathaniel Fox, and the Southern District of New York's Electronic Case Filing Rules & Instructions by facsimile and FedEx, pursuant to the notice provision (Section 4.2) of the August 14, 2007 Secured Promissory Note at issue in this litigation, upon defendant Amerex Group Inc. at the 1105 N. Peoria Avenue, Tulsa, Oklahoma 74106, Attention: Nicholas Malino, facsimile number: 1.918.599.0786.

                                     _____
                                         Richard J. Lombardo

Sworn to before me this
27th day of June 2008

Notary Public        **BRIAN COOLEY**
       **NOTARY PUBLIC, STATE OF NEW YORK**
           **NO. 01CO6177349**
       **QUALIFIED IN NEW YORK COUNTY**
   **COMMISSION EXPIRES NOVEMBER 13, 20 11**

Andrew T. Solomon (AS 9200)
Gretchen S. Silver (GS 1534)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                      :

PROFESSIONAL OFFSHORE
OPPORTUNITY FUND, LTD., a company    :   08-CIV-5643 (SAS)
registered under the laws of the British Virgin
Islands,                                     :

                              **CLERK'S CERTIFICATE**

               Plaintiff,        :

    -against-                :   ECF CASE

AMEREX GROUP, INC., a Delaware
corporation,                          :

             Defendant.     :

                                   :
------------------------------------------------------------------ x

      I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the

Southern District of New York, do hereby certify that this action commenced on June 23, 2008

with the filing of a Summons and Complaint.  On June 24, 2008, a Summons and a copy of the

Complaint was served on Defendant Amerex Group, Inc., and proof of such service was filed on

June 27, 2008.

      I further certify that the docket entries indicate that the Defendant has not filed an

answer or otherwise moved with respect to the Complaint.  The default of the Defendant is hereby

noted.

Dated:  New York, New York

*JULY 22, 2008*

**J. MICHAEL MCMAHON**
Clerk of the Court

By: _____
Deputy Clerk

2

| Calculation Date | July 24, 2008 |
|---|---|

### **Count I**

| | | |
|---|---|---|
| Principal | $ | 750,000.00 |
| Utilization Fees | $ | 75,000.00 |
| Total Due | $ | 825,000.00 |
| | | |
| Interest Rate | | 18.00% |
| Interest Accrual Date | | April 30, 2008 |
| Per Diem Interest Rate | $ | 406.85 |
| Interest Days To Date | | 85 |
| Accrued Default Interest | $ | 34,582.19 |

### **Count II**

| | | |
|---|---|---|
| Repurchase Amount | $ | 700,000.00 |
| | | |
| Interest Rate (per month) | | 2.00% |
| Interest Accrual Date | | June 20, 2008 |
| Per Diem Interest Rate | | 460.27 |
| Interest Days | | 34.00 |
| Accrued Default Interest | $ | 15,649.32 |

### **Total Damages**

| | | |
|---|---|---|
| Note Principle and Fees | $ | 825,000.00 |
| Interest on Principle and Fees | $ | 34,582.19 |
| Repurchase Price of Shares | $ | 700,000.00 |
| Interest on Repurchase Price | $ | 15,649.32 |
| Attorneys' Fees | $ | 2,000.00 |
| Total as of July 23, 2008 | $ | 1,577,231.51 |
| | | |
| Additional daily interest thereafter | $ | 406.85 |
| | $ | 460.27 |
| | $ | 867.12 |

Andrew T. Solomon (AS 9200)
Gretchen S. Silver (GS 1534)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                      :

PROFESSIONAL OFFSHORE
OPPORTUNITY FUND, LTD., a company     :   08-CIV-5643 (SAS)
registered under the laws of the British Virgin
Islands,                           :

                Plaintiff,       :   **DEFAULT JUDGMENT**

  -against-                 :   ECF CASE

AMEREX GROUP, INC., a Delaware
corporation,                     :

                Defendant.    :

                                        :
------------------------------------------------------------------ x

**THIS CAUSE**, having been brought before the Court by way of the motion of plaintiff,

Professional Offshore Opportunity Fund, Ltd. ("PROOF"), through its counsel Sullivan &

Worcester LLP, seeking entry of default judgment pursuant to Rule 55(b)(2) of the Federal Rules

of Civil Procedure against defendant Amerex Group, Inc. ("Amerex"); the Summons and

Complaint having been served on Amerex on June 24, 2008; proof of service on Amerex having

been filed on June 27, 2008; PROOF having moved for a default judgment, which motion was

served on Amerex, and Amerex having failed to respond to the motion; the Court having

considered PROOF's submissions; and for good cause having been shown, it is hereby

**ORDERED** that PROOF's motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure is hereby granted; and it is further

**ORDERED** that default judgment is entered against defendant Amerex Group, Inc. in the amount of $1,577,231.51 as of July 24, 2008 with an additional $867.12 per day thereafter until the judgment is entered. The calculation of the judgment is as follows:

      A.      Principal amount due under the Note: $750,000;

      B.      Capital Utilization Fees due under the Note: $75,000;

      C.      Post-default interest on the Principal and Capital Utilization Fees totaling $825,000 at the rate of 18% per annum from April 30, 2008: $406.85 per day until the date of judgment, or $34,582.19 as of July 24, 2008;

      D.      Amount due for defendant's share repurchase obligation: $700,000;

      E.      Interest on the amount owed for the repurchase of the shares at the default rate of 2% per month from June 20, 208 to the date of judgment: $460.27 per day until the date of judgment, or $15,649.32 as of July 24, 2008;

      F.      Attorneys' fees and costs of this lawsuit and collection: $2,000.

**ORDERED** this judgment will bear interest at the judgment rate for the date of entry until paid; and it is further

**ORDERED** that PROOF shall serve a copy of this judgment on Amerex at 1105 N.

Peoria Avenue, Tulsa, Oklahoma 74106 and by facsimile at 918-599-0786 no later than seven

days following receipt of the judgment by PROOF's counsel.


Dated: New York, New York

       _____, 2008          _____

                                           THE HONORABLE SHIRA A. SCHEINDLIN
                                           United States District Judge